AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

FILED
APR 11 2019
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. M-19- 182 -SM
Motorola cell phone, Model: XT1921-3, IMEI: )
351841097505772; and Samsung cell phone, model: )
SM-J260T1, IMEI: 352475103631691 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____Western____ District of ____Oklahoma____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Methamphetamine with Intent to Distribute |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:
See Affidavit, attached hereto

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Joel Hall, Task Force Officer, HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 4-11-19

_____
Judge's signature

City and state: Oklahoma City, Oklahoma    SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SILVER MOTOROLA, MODEL: XT1921-3, IMEI: 351841097505772, AND BLACK SAMSUNG, MODEL: SM-J260T1, IMEI: 352475103631691 CURRENTLY LOCATED IN SECURE EVIDENCE STORAGE AT THE HOMELAND SECURITY INVESTIGATIONS OFFICE IN OKLAHOMA CITY, OK | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Joel Hall, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the U.S. who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am currently employed as an Agent with the District Attorney's Office, 21st Judicial District of Oklahoma. I have been a

certified peace officer in the State of Oklahoma since September 2009. I am presently assigned as a Task Force Officer (TFO) to the HSI office in Oklahoma City, Oklahoma (hereinafter referred to as HSI Oklahoma City). As a TFO, I am authorized to conduct criminal investigations of violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3.   I currently have over 1,400 hours of continuing education through the Council on Law Enforcement Education and Training. I have completed specialized training in narcotic investigations through the Oklahoma Bureau of Narcotics and Dangerous Drugs and the Drug Enforcement Administration. I have arrested, interviewed, and debriefed numerous individuals who have been involved and have personal knowledge of importing, transporting and concealing narcotics, as well as, the amassing, spending, converting, transporting, distributing, laundering and concealing of proceeds from narcotics trafficking and smuggling. I have participated in numerous investigations involving physical and electronic surveillance.

4.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.   The property to be searched are a silver Motorola cell phone, Model: XT1921-3, IMEI: 351841097505772, and black Samsung cell phone, model: SM-J260T1, IMEI:

352475103631691, hereinafter the "Devices". The Devices are currently located in secure evidence storage at HSI Oklahoma City, located at 3625 NW 56th St, Oklahoma City, OK.

6. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. The Devices were seized incident to arrest from Wanda JONES, and Roberto MONTOYA for a violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. We are currently investigating this case for additional potential charges, including conspiracy to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846.

8. On April 9, 2019, Oklahoma Bureau of Narcotics Senior Agent Brian Tallant was monitoring eastbound traffic on Interstate 40 in Canadian County, Oklahoma when he observed a silver Ford Crown Victoria, Arizona license plate number CLS7249 (the "vehicle"), make an unsafe lane change. Senior Agent Tallant conducted a traffic stop of the vehicle. The traffic stop occurred on Interstate 40 eastbound near mile marker 137 in Canadian County, Oklahoma, within the Western District of Oklahoma. Senior Agent Tallant made contact with the driver, Wanda JONES, and front seat passenger Roberto MONTOYA.

9. When Senior Agent Tallant first approached JONES, she made the spontaneous statement that MONTOYA was having chest pains and she was taking him to the hospital. MONTOYA was later determined to be in no distress that required transportation to the hospital.

While completing the steps necessary to issue the warning, Senior Agent Tallant engaged both JONES and MONTOYA about their travel plans and noticed inconsistencies between their stories about where they were going and for what purpose. Senior Agent Tallant issued JONES a warning for changing lanes unsafely and then requested JONES' permission to search the vehicle. JONES initially consented to a search of the vehicle but recanted that consent before the search had commenced. Senior Agent Tallant is also a certified K-9 officer and he deployed his partner "Bolo", a certified narcotics detection dog (NDD), to perform a free-air sniff of the vehicle. A free-air sniff is where a trained NDD sniffs the air around a vehicle for the odor of narcotics emanating from the vehicle. Senior Agent Tallant and Bolo completed an initial training and certification course through Little Rock K9 Academy in January 2017. Senior Agent Tallant and Bolo are certified through CLEET. Bolo is trained to detect the odors of marijuana, methamphetamine, heroin and cocaine. Bolo and Senior Agent Tallant are certified as a CDS Certified Detector Team annually with their most recent certification on January 16, 2019. During the search, Bolo alerted to the odor of narcotics emitting from the vehicle. A search of the vehicle was then conducted of the vehicle based in part on the alert.

10. During the search, a pink backpack was found in the trunk of the vehicle. The backpack contained clothing belonging to a woman and a child. Also located inside the backpack under the clothes were eight bundles of a white crystalline substance. The bundles were wrapped in clear cellophane. Seven of the bundles were labeled "LP" and wrapped in a combination of clear cellophane and black carbon paper with what appeared to be red automotive grease. A field test resulted in a presumptive positive for the presence of methamphetamine. The white crystalline substances were also field tested with an infrared spectrometer, which

provided a positive result for methamphetamine. The approximate gross weight of the packages containing the methamphetamine is 4.10 kilograms.

11. I and HSI Special Agent Ryan Browning met with JONES in an interview room at the OBN Headquarters and advised her of her *Miranda* rights. JONES agreed to waive those rights and answer questions. In a recorded interview, JONES stated that the car belongs to MONTOYA and that they had left Arizona on Monday morning, April 8, 2019. JONES stated that MONTOYA was to pay her $200.00 dollars to drive him to Oklahoma City to pick up his sister. JONES stated she did not know exactly where they were going in Oklahoma City and that they were not planning on staying. JONES stated that she did not know the drugs were in the pink bag but admitted to moving the pink bag from the inside of the vehicle to the trunk during their trip.

12. I and SA Browning met with MONTOYA in an interview room at the OBN Headquarters and advised him of his *Miranda* rights. MONTOYA agreed to waive those rights and answer questions. In a recorded interview, MONTOYA admitted to picking up the drugs in Arizona and that he was being paid $6,000 to transport the eight pounds of methamphetamine to Oklahoma City. MONTOYA stated JONES was to receive a payment of $2,500 for assisting in the transportation of the methamphetamine.

13. Based on the aforementioned facts, there is probable cause to believe that Roberto MONTOYA and Wanda JONE did knowingly possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1).

14. The Devices are currently located in secure evidence storage at HSI Oklahoma City, located at 3625 NW 56th St, Oklahoma City, OK. In my training and experience, I know that the Devices have been stored in a manner in which its contents are (to the extent material to this investigation) in substantially the same state as they were when the Devices first came into the possession of HSI.

15. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

16. From my training and experience, I know that drug smuggling is often a conspiratorial crime. Individuals who possess controlled substances with the intent to deliver them typically do so in groups with the assistance of others. Drug smugglers often use their cell phones to communicate with other members of the drug trafficking organization. Records of these communications and the contact information of the smugglers are often saved in the individual's phone.

17. An examination can reveal the approximate location of the Devices and the user by associating a specific date and time with: historical GPS data, historical cell-site data, and logs of Wi-Fi networks. Additionally, an examination can reveal the Devices' unique identifiers (phone number, IMEI, IMSI, etc.). These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

18. Drug smugglers often take and store photographs of themselves with controlled substances and the proceeds of drug sales, and usually take or store these photographs using their personal cell phones.

19. Individuals who illegally possess controlled substances usually possess other items related to drug smuggling, such as firearms, the proceeds of drug sales, such as bulk U.S. Currency, and receipts for the purchase of these items.

20. From my training and experience, I know it is common for individuals who illegally possess controlled substances to conceal the contraband in secure locations within their residence, motor vehicles, and other real property over which they have dominion and control.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or

7

years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

23.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

f. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

g. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    i. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine a devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Joel Hall
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me
on April 11, 2019:

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched are a silver Motorola cell phone, Model: XT1921-3, IMEI: 351841097505772, and black Samsung cell phone, model: SM-J260T1, IMEI: 352475103631691, hereinafter the "Devices". The Devices are currently located in secure evidence storage at HSI Oklahoma City.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**Silver Motorola cell phone, Model: XT1921-3, IMEI: 351841097505772**



**Black Samsung cell phone, Model: SM-J260T1, IMEI: 352475103631691**



## **ATTACHMENT B**

1.  All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and /or violations of 21 U.S.C. § 846 involving Roberto MONTOYA and Wanda JONES, and others, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs smuggled as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording Roberto MONTOYA or Wanda JONES schedule or travel; and

    e. all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.